## Case No. 1,710.

### BOUYSSON et al. v. MILLER et al.

[Bee, 190.][1]

District Court, D. South Carolina. Aug. 13, 1802.

SEAMAN—WAGES—CAPTURE OF VESSEL.

Owners decreed to pay the usual monthly wages, upon proof of the voyage, and of the mariner's doing duty on board. The vessel was captured.

[See, as to the effect of capture upon seamen's wages, Emerson v. Howland, Case No. 4,441; Philips v. McCall, Id. 11,104; Brown v. Lull, Id. 2,018; Pitman v. Hooper, Id. 11,185; Williams v. The Juno, Id. 17,-724; Girard v. Ware, Id. 5,460.]

[In admiralty. Libel by Bouysson and Holmes against Miller and Ryley for seaman's wages. Decree for libellant Holmes, and libel dismissed as to Bouysson.]

BEE, District Judge.

In this case wages are claimed of the defendants, as owners of a vessel called the William and Sarah, which left this port in April 1802, bound, as is alleged, to the coast of Africa. The libel states that she was captured by a Spanish privateer, on the coast of South America, and sold. No evidence is adduced either as to the extent of the voyage, the rate of wages, or time of their becoming due. Holmes claims from this port; Bouysson from Sierra Leone. The cause of capture of the vessel is wholly in the dark.

[1] [Reported by Hon. Thomas Bee, District Judge.]

Several witnesses have been examined; their testimony amounts to this: that in the beginning of April 1800, Holmes, one of the actors, applied to one Thomas Covenay to be his security for his advance money, on board this vessel, in case he should not comply with his agreement to go the voyage. It seems that Covenay declined to do so. M'Lane proved that Holmes took some stores from his house in company with the captain of this schooner. He says the vessel was then about to sail for Cape de Verd. He did not see the things carried on board. John Watson says that about two years ago he saw Holmes, as cook to Captain Harris, come to his store, with the captain. He saw him several times carry things on board; and understood from Harris that he was going to the coast of Africa. Gardner says that he was at Bance Island, on that coast, and saw Holmes on board a schooner called the William, from Charleston. He was generally about the camboose. He had known Holmes in this port, and they were together about a fortnight at this island. Morrison proves that, in the month of March last, Holmes came on board his vessel at the Havanna, and asked for a passage to Charleston, which was given him. There is no further evidence respecting Holmes.

An affidavit has been produced on the part of Bouysson, which is inadmissible, first because he is a party concerned; and secondly, because he was present in court, and should have been examined viva voce, if at all. A case has been quoted from Bay's Reports, 453, to shew that the affidavit of a party interested may be admitted as evidence. But, two circumstances of that case are wanting here; for, the defendant there agreed expressly to be bound by the affidavit; and the person who made it was absent. No other testimony is offered to support Bouysson's demand, except that of Henry Wessner, who says he was at Sierra Leone, on the coast of Africa, from May to July 1800. That some time in June he heard the captain of this schooner tell Bouysson's landlady that if she would bring him her bill, he would pay it. That he saw Bouysson carry his clothes on board, and the landlady told him the captain had paid the money.

This suit has assumed different shapes. A libel was filed in April last against Miller and Morrison, as owners of this vessel, by the present actors. A plea was filed by Morrison on the 3d May, setting forth that he never had any interest in the vessel or cargo, either as owner, or otherwise; and, that Miller was absent from the state. Upon this, another suit by attachment against the property of Miller and Ryley, was instituted. To this, a demurrer was interposed, and, upon argument, overruled [Case No. 1709], and then the parties upon whom the attachment was served, filed their answer of the 7th instant. These persons disclaim any knowl-edge of the actors, or of the matters stated in their libel, except from the information of the actors themselves. They believe Miller and Ryley, who are absent from the state, to be owners of this schooner. It is admitted that Thomson, one of the defendants, is agent for Miller and Ryley. Stipulations have been entered into according to the practice of the court, that if a decree be given against the absent parties, these defendants will be answerable to the amount.

From the pleadings little can be inferred. None of the defendants are interested in the suit, except as garnishees. What they acknowledge is mere hearsay, and not sufficient to affect the owners of the schooner. We are compelled therefore to have recourse to such proof in support of this libel, as has been already stated. As to Bouysson, there is no evidence of a contract for wages, nor of any voyage by him performed. He was in a distant country, and must naturally have wished to return home. What the amount paid to the landlady was we do not know, but it probably discharged any demand he was entitled to make. As to him, I must therefore dismiss the libel.

The testimony in favour of Holmes is much stronger. It is proved to my satisfaction that he acted as cook on board this vessel in the harbour of Charleston, and afterwards went in her, in the same capacity, to the coast of Africa. A determination similar to this took place two years ago, in the case of a vessel belonging to Tunno and Price, of this place, condemned at Majorca. Let Holmes, therefore, receive his wages for two months, as it appears probable that he found security for a month's pay in advance, though Covenay declined to become so. No rate of wages having been fixed, I decree that the defendants pay the same at thirty dollars per month, with costs of suit.

[NOTE. For decision overruling a demurrer to the libel, see Case No. 1,709.]